c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TRIPLE NICKEL FABRICATORS, L.L.C., Plaintiff | CIVIL ACTION NO. 1:23-CV-01103 |
| VERSUS | JUDGE DOUGHTY |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. YNO5234, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is an unopposed Motion to Dismiss (ECF No. 16) filed by Defendants Peninsula Insurance Bureau, Inc. ("Peninsula") and TechLoss Consulting & Restoration, Inc. ("TechLoss"). Peninsula and TechLoss seek dismissal of Plaintiff Triple Nickel Fabricators, L.L.C.'s ("Triple Nickel's") claims against them for failure to state a viable claim for relief.

Because it is unopposed and because Triple Nickel fails to state claims against them, Peninsula's and TechLoss's Motion to Dismiss (ECF No. 16) should be GRANTED.

I. **Background**

Triple Nickel filed a Petition for Damages ("Petition") in the Ninth Judicial District Court, Rapides Parish, Louisiana against Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. YNO5234 ("Underwriters"), Peninsula,

1

TechLoss, Brown Claim Management, L.L.C. ("Brown"), and Machine-Tech Services ("Machine Tech") (collectively, "Defendants"). ECF No. 1-7.

Triple Nickel manufactures welded products in Boyce, Louisiana. *Id.* at 3. It uses certain welding machines and welding booths located at that property. *Id.* On or about August 27, 2020 during Hurricane Laura, Triple Nickel alleges it suffered property damage to the Boyce property, including to eight welding booths and units manufactured by Lincoln Electric Company ("Lincoln"). *Id.* Triple Nickel claims the Boyce property was damaged, and that all ten welding booths and units suffered water damages resulting from rainfall after the building suffered structural damage. *Id.*

Underwriters issued Policy Number YNO5234 (the "Policy") to Triple Nickel for the period of February 14, 2020 through February 14, 2021. *Id.* Triple Nickel claims it consulted with Lincoln regarding the welding machines and booths. *Id.* Lincoln issued a letter dated November 4, 2020 to Triple Nickel recommending replacement of the equipment. *Id.* Lincoln stated that the electronical components should be considered unrepairable, and that damage by water immersion is not covered under their warranty. *Id.* at 3-4. Thus, Triple Nickel made an insurance claim to Underwriters for the damages. *Id.* at 4.

Underwriters retained Peninsula to adjust the claims. *Id.* Peninsula retained Brown to assist. *Id.* Brown and/or Peninsula retained TechLoss to inspect the welding equipment. *Id.* And TechLoss retained Machine Tech to conduct the inspection. *Id.* at 5.

Triple Nickel alleges that, due to security issues, the welding machines were moved to the private property of Triple Nickel. *Id.* To facilitate the inspection, it moved the machines back to the Boyce property. *Id.* According to Triple Nickel, Machine Tech and TechLoss required electrical power to be installed for the machines for their inspection. *Id.* Due to Lincoln's warnings of potential electrocution, Triple Nickel required a waiver of liability when the machines were wired back to power. *Id.* Machine Tech executed the waiver for testing the equipment. *Id.*

On June 25, 2021, Machine Tech inspected the site and determined that only four of the ten welding booths were damaged. *Id.* Due to the waiver of liability, Machine Tech refused to test any of the welding equipment during inspection. *Id.* Machine Tech stated it would be a safety risk due to water damage/intrusion. *Id.* Triple Nickel alleges that Machine Tech's professional noted that the manufacturer's statement was appropriate and that he did not need to plug in the machines to know they did not work. *Id.*

On July 27, 2021, Jennifer Frommer ("Frommer"), an adjuster for Peninsula, informed Triple Nickel that TechLoss had determined that four of the ten welding booths were confirmed to be damaged and that a check for $1,540 for the four damaged booths would be forthcoming. *Id.* at 6. Frommer also stated in her email that the investigation had not been completed and later asked for another inspection. *Id.* On July 29, Triple Nickel provided the waiver for another inspection on August 3, 2021. *Id.* However, Triple Nickel alleges no Defendants appeared. *Id.*

Triple Nickel states Peninsula and Brown initially rejected the waiver, asserting Triple Nickel was in breach of the insurance contract. *Id.* On September 24, 2021, Peninsula signed the waiver on behalf of Underwriters and the inspection occurred on October 7, 2021. *Id.* Triple Nickel alleges that Machine Tech indicated during the inspection that the machines would be considered a loss. *Id.* at 7.

Triple Nickel received an email from Frommer on November 18, 2021, stating that TechLoss reported there were no issues with two welding machines that were tested. *Id.* Peninsula, on behalf of Underwriters, denied the claim. *Id.* Peninsula summarized their findings in a denial dated December 23, 2021. *Id.* Thus, Triple Nickel alleged a cause of action against Underwriters for contract and statutory violations under the Louisiana Insurance Code. *Id.* Triple Nickel alleged a cause of action against Peninsula and TechLoss for claims of negligence. *Id.* And Triple Nickel alleged claims of negligence and failure to properly adjust against MachineTech and Brown. *Id.*

All Defendants, except MachineTech, filed an Answer in the state court action. ECF No. 1-7. Upon receipt of Triple Nickel's discovery responses on July 18, 2023, Underwriters, Peninsula, and TechLoss ("Removing Defendants") filed a Notice of Removal, asserting diversity jurisdiction over the properly joined defendants. ECF No. 1 at 11.

Peninsula and TechLoss now seek dismissal of Triple Nickel's claims against them for failure to state a claim. ECF No. Peninsula and TechLoss attach the Policy in support of their motion.[1] ECF No. 16-2. The motion is unopposed.

## II. Law and Analysis

### A. Triple Nickel's allegations must raise a plausible right to relief.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[2] But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and

---

[1] When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" – including public records. *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

Here, Triple Nickel's Petition references the Policy, Number YNO5234. ECF No. 1-7. Thus, the Court need not convert the motion to consider the document attached, which was referenced in the complaint and is central to Triple Nickel's claim. *See Collins*, 224 F.3d at 499; *Norris*, 500 F.3d at 461, n.9.

[2] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

### B. Triple Nickel fails to allege plausible claims against Defendants Peninsula and TechLoss.

Peninsula and TechLoss argue that Triple Nickel, as an insured, does not have a cause of action against insurance adjusters or claims handlers in tort, or for statutory violations under the Louisiana Insurance Code.[3] ECF No. 16-1 at 4-10.

Here, Triple Nickel alleges Underwriters retained Peninsula to adjust Triple Nickel's claim. ECF No. 1-7 at 4. Peninsula retained Brown to assist it in adjusting the claims. *Id.* Brown and/or Peninsula retained TechLoss to inspect the welding equipment. *Id.* TechLoss retained Machine Tech to inspect the equipment. *Id.* at 5.

Frommer, an adjuster for Peninsula, informed Triple Nickel on July 27, 2021, that TechLoss determined four of the ten welding booths were damaged and a check

---

[3] Peninsula and TechLoss also argue that Triple Nickel fails to allege a cause of action for breach of contract, to the extent such a claim could be construed from the allegations. ECF No. 16-1 at 9. However, Triple Nickel's Petition does not allege any contractual breach on behalf of Peninsula or TechLoss. And no privity of contract between Triple Nickel and Peninsula or TechLoss is alleged. Regardless, no such claim was asserted, and the Court need not further address such arguments.

6

for those would be forthcoming. *Id.* at 6. On July 28, 2021, Peninsula and Brown issued the check for the four welding booths. *Id.* For the welding equipment, Triple Nickel required a waiver for the inspection. Peninsula and Brown initially rejected the waiver. *Id.* at 6. On September 24, 2021, Peninsula signed the waiver, and an inspection was scheduled. *Id.*

After Machine Tech inspected the equipment, Frommer stated TechLoss reported there were no issues with two welding machines tested, and Peninsula denied the claim. *Id.* at 7. Peninsula summarized their findings and denied the claim on December 23, 2021. *Id.* Triple Nickel alleges "Defendants" failed to provide any documentation in which their decisions were based. *Id.*

Triple Nickel alleges Peninsula was "negligent and damaged Triple Nickel" in failing to timely or properly adjust the claim; failing to supervise its contracted subsidiaries, including Brown, TechLoss, and Machine Techs; failing to appropriately and timely communicate with Triple Nickel regarding services to be rendered; failing to consult with Lincoln prior to, during, or after inspections; and failing to act in good faith and fair dealing. *Id.* at 8.

Triple Nickel alleges TechLoss was "negligent and damaged [Triple Nickel]" in failing to supervise and/or monitor its subordinate Machine Techs; failing to properly review and adjust information from Machine Techs; failing to accurately report information to Peninsula and Brown; and failing to act in good faith and fair dealing. *Id.*

Louisiana courts have consistently held that no cause of action lies in tort against an insurance adjuster. *McKee v. Hanover Ins. Co.*, 06-1241, 2007 WL 837247, at *2 (W.D. La. Mar. 15, 2007) (citing cases). And insureds have no cause of action against claims adjusters under La. R.S. 22:1892 and 22:1973. *Aras v. Secured Risk Ins. Grp. Inc.*, 2023 WL 3934672, at *2 (W.D. La. June 9, 2023), *amended*, 2023 WL 4480635 (W.D. La. July 11, 2023).

As previously stated by this Court,

> Louisiana law generally restrict[s] an insured's causes of action against a third-party/independent adjuster and recognizes that this adjuster has no duty to the insured. *RDS, Inc. v. Gab Robins N. Am., Inc.*, 2005 WL 2045956 (W.D. La. Aug. 23, 2005). Courts have held, however, that an adjuster who engages in fraud or misrepresentations **may** assume a duty to the insured. *Martin v. Wood*, 2011 WL 4550339, at *4 (E.D. La. Sep. 29, 2011) (citing *Pellerin v. Cashway Pharm. of Franklin*, 396 So.2d 371 (La. Ct. App. 1st Cir. 1981)). Such a claim requires showing an intentional, material misrepresentation by the defendant and justifiable reliance, resulting in injury, by plaintiff. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

*Tra-Dor Inc. v. Underwriters at Lloyds London*, 2022 WL 1613184, at *2 (W.D. La. May 20, 2022), *appeal dismissed sub nom. Tra-dor, Inc. v. Certain Underwriters at Lloyds London*, 2022 WL 17691569 (5th Cir. Dec. 14, 2022).[4] And Louisiana courts and federal courts applying Louisiana state law have recognized that independently hired investigators or appraisers are analogous to adjusters for tort claim purposes. *Prewitt v. Allstate Ins. Co.*, 2007 WL 3251310, at *3 (W.D. La. Sept. 12, 2007) (fire

---

[4] Specifically, Sections 22:1892 and 22:1973 impose a duty on insurers not independent adjusters. Furthermore, a claims adjuster, as the disclosed agent of another, has no duty to the insured. La. Civ. Code art. 3016 ("A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract."). Independent adjusters, however, may be liable to the insured for delictual acts of fraud or intentional misrepresentation under Louisiana Civil Code article 1953.

inspector's "legal position is analogous to that of an insurance adjustor"); *Thomas v. Livingston Parish Sheriff's Office,* 2004–1822 (La.App. 1 Cir. 9/23/05); 923 So.2d 662, 667–68 (plaintiff had no valid negligence claim against appraiser hired by Sheriff's Office on behalf of the seizing creditor); *see also Audler,* 519 F.3d at 254 (company hired by mortgage lender to prove flood zone determinations owed no duty to property owner). Additionally, third-party administrators have no duty in tort to an insured.

Here, Triple Nickel fails to plausibly allege Peninsula or TechLoss owed a duty to them under Louisiana law. Triple Nickel also does not allege any fraud or intentional misrepresentation against Peninsula or TechLoss. And Triple Nickel does not oppose their dismissal. Thus, Peninsula and TechLoss should be dismissed.

### III. Conclusion

Because Triple Nickel fails to allege plausible claims against Peninsula and TechLoss,

IT IS RECOMMENDED that Peninsula's and TechLoss's Motion to Dismiss (ECF No. 16) be GRANTED, and that Triple Nickel's claims against Peninsula and TechLoss be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 18th day of April 2024.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE